

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-4-2004

# Abuali v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-4244

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Abuali v. Atty Gen USA" (2004). *2004 Decisions.* Paper 146.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/146

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 02-4244

———

SULEIMAN ABUALI,

Petitioner

v.

JOHN ASHCROFT, Attorney General of the United States,

Respondent

———

On Petition for Review of an Order of the Board of Immigration Appeals
(No. A73-035-795)

———

Argued: May 24, 2004

Before: ROTH, AMBRO and CHERTOFF, *Circuit Judges.*

(Filed: November 4, 2004)

JAMES G. MARTIN (Argued)
Levitt & Needleman, P.C.
1780 Broadway
10th Floor
New York, NY 10019

    *Counsel for Petitioner*

PETER D. KEISLER
Assistant Attorney General
MARY JANE CANDAUX
Senior Litigation Counsel
LESLIE CAYER OHTA
DANIEL E. GOLDMAN (Argued)
Office of Immigration Litigation
Civil Division
United States Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044

    *Counsel for Respondent*

---

OPINION

---

CHERTOFF, *Circuit Judge*.

Suleiman Abuali petitions this Court to review a final order of removal entered by

the Board of Immigration Appeals (BIA).  The BIA issued an expedited summary

affirmance of the Immigration Judge's (IJ) order of removal pursuant to 8 C.F.R.

§ 1003.1(e)(4).[1]  Abuali challenges both the propriety of the BIA's summary affirmance

---

[1]At the time the BIA acted on Abuali's appeal, the streamlining regulations were
found at 8 C.F.R. § 3.1(a)(7) (2002).  Because the language of the two sections is largely

in his case, as well as the validity of that procedure generally. Abuali also challenges, indirectly, the IJ's failure to consider evidence that Abuali's citizenship is something other than Jordanian. We will deny the petition.

I.

A.

Abuali first applied for asylum on August 12, 1993. That application was apparently not acted upon. On April 3, 1996, the Immigration and Naturalization Service (INS)[2] commenced deportation proceedings against Abuali. A Master Calendar Hearing was held in Newark, New Jersey on July 19, 1996. At that Master Calendar Hearing, Abuali admitted that he was a citizen and native of Jordan. He also withdrew his claim for political asylum.

On January 10, 1997, Abuali requested an adjournment and leave to submit a new asylum application. At an individual hearing on August 4, 1997, the IJ refused to consider Abuali's application for asylum and only considered Abuali's applications for withholding of deportation and voluntary departure in lieu of deportation. The IJ also, in light of Abuali's statement at the July 19, 1996 Master Calendar Hearing, refused to

_____

identical, we will refer to 8 C.F.R. § 1003.1(e)(4) throughout this opinion.

[2] On March 1, 2003, the INS ceased to exist as an agency within the Department of Justice and its functions were transferred to the Department of Homeland Security. See Homeland Security Act of 2002, Pub. L. No. 107-296, 110 Stat. 2135 (2002). For the sake of consistency, we will use the term INS to refer both to the historical INS and to the Department of Homeland Security to the extent that it is currently fulfilling duties historically performed by the INS.

consider evidence that Abuali's citizenship was anything other than Jordanian. The IJ denied Abuali's request for withholding of deportation but granted his application for voluntary departure.

On August 27, 1997, Abuali appealed the IJ's refusals to consider his asylum application and to reconsider his citizenship. On November 30, 1999, the BIA reinstated Abuali's claim for asylum but did not address the question of his citizenship. On May 5, 2000, an individual hearing was held regarding Abuali's claims for asylum and withholding of deportation. At that hearing, the IJ again refused to entertain the contention that, despite his statement to the contrary, Abuali was not a citizen of Jordan. The IJ issued an oral opinion finding Abuali's testimony credible but denied asylum and withholding of deportation based on Abuali's failure to explain why he was unable to seek employment in Jordan and on changed country conditions in the West Bank. On May 23, 2000, Abuali timely appealed to the BIA the IJ's decisions not to consider the question of his citizenship and to deny him asylum and withholding of deportation.

On December 5, 2001, while his appeal was pending before the BIA, Abuali forwarded to the BIA a letter from the Permanent Mission of the Holy Kingdom of Jordan to the United Nations stating that he had "never enjoyed a Jordanian citizenship." (R. 12.[3]) On October 23, 2002, the BIA affirmed without opinion the IJ's May 5, 2000

---

[3] Citations to the Administrative Record are designated by "R." The letter actually states that "Mr. Suleiman Abbas Ahmad Ibrahim has never enjoyed a Jordanian citizenship." (R. 12.) We note in passing that the birth certificate submitted by Abuali at his deportation hearing lists his father's name as "Abas Ahmad Ibrahim," (App. 10),

4

decision. Abuali timely filed for review before this Court.

B.

Abuali was born in 1964 in the town of Mukhmas. At the time of his birth, Mukhmas was a part of the Kingdom of Jordan. Since 1967, however, Mukhmas and its surrounding territory have been part of the Israeli Occupied Territories commonly referred to as the West Bank. According to Abuali, his birth certificate was issued by the Kingdom of Jordan prior to the occupation of his native region by Israel. The birth certificate offered into evidence at his deportation hearing, however, was issued in 1971 by the West Bank Command. Abuali has never sought, nor apparently has he ever held, a Jordanian passport.

Abuali entered the United States on July 18, 1989 with a tourist visa using an Israeli-issued travel document. At that time, Abuali referred to himself as, and the INS issued an arrival document listing him as, "Stateless/Palestinian." Abuali did not leave the United States upon the expiration of his tourist visa. Instead, in 1993, he applied for asylum with the United States. On his asylum application, however, Abuali listed his nationality as Jordanian. Further compounding the confusion, Abuali (through counsel) admitted at a July 19, 1996 hearing the truth of an allegation in an Order to Show Cause that he was a native and citizen of Jordan.

In his subsequent asylum application filed in 1997, Abuali seems to have

---

while other documentation lists it as "Abbas Abuali," (R. 878.)

attempted to clarify the confusion by listing his country of birth as Jordan, his nationality at birth as Jordanian, but his then-current nationality as "Stateless." But almost immediately thereafter, at an August 4, 1997 hearing, Abuali testified both that he was and that he was not a Jordanian citizen. A travel document issued to Abuali by the Israeli Consulate General in New York City in September 1998 listed his nationality as Jordanian, although the October 30, 2001 document issued by the Permanent Mission of the Holy Kingdom of Jordan to the United Nations stated that "Mr. Suleiman Abbas Ahmad Ibrahim has never enjoyed a Jordanian citizenship."[4] (R. 12.) Two years later, during his May 2000 hearing, Abuali again referred to his nationality as "Palestinian."

## C.

In his 1993 asylum application, Abuali stated that he sought the protection of the United States because he had no freedom in his country and because of a dispute with another family. In that same application, Abuali speculated that, should he return to his native Mukhmas, he might be killed by the "other family" or thrown in jail.[5] (R. 215.) At his August 4, 1997 hearing, Abuali stated that he feared returning to Mukhmas because it was "possible that [he] could die" and that there was "danger for [him] from

---

[4] See supra note 3 and corresponding text.

[5] The record is not clear as to the identity of the "other family," the nature of Abuali's conflict with them, or why he fears that they might kill him. The record is also not clear as to whether the IJ, who found credible Abuali's testimony with respect to the conditions in Mukhmas at the time he left, also credited the 1993 application's averment with respect to the "other family." The issue was not pressed by Abuali on appeal and is not central to our determination.

both sides." (R. 524.) At his May 5, 2000 hearing, Abuali reiterated that he feared "[d]estruction and death" should he return to Mukhmas because the only work available to him was in Israel, forcing him to pass through checkpoints and work within Israel. (R. 178.)

At his several hearings, Abuali related the sad picture of life in and around the Israeli Occupied Territories at the time Abuali was living there. Abuali related how, in his native Mukhmas, the Arabs would throw rocks at the Israeli busses. Abuali explained that the only work to be found in the region was in Israel, forcing Arabs to cross from the Occupied Territories into Israel every day. At the border, the Arabs, not being citizens of Israel, were subjected to searches. During these searches, Abuali explained, his papers were regularly inspected, his bag searched, and his lunch thrown on the ground. Also during these border crossings, Abuali asserted, Arabs and residents of the Occupied Territories would be threatened by Israelis, who would often "tr[y] to hit" them.

Abuali related two particular incidents of violence, one of which involved Abuali's brother. According to Abuali, his brother, Ahmed Abuali, was detained by the Israeli police in connection with a stone-throwing incident. During that detention, the Israeli police stuffed cigarettes in Ahmed's ears.[6] Abuali also related an incident in which he was beaten while working in Jerusalem by two men he identified as Israelis

---

[6] Abuali also alleges that, on two separate occasions since his arrival in the United States, two of his other brothers were beaten and imprisoned.

7

with "a religious look." The two men began beating Abuali by striking him in the stomach. When Abuali fled, the men threw stones at him. The men's threatening behavior stopped only upon the arrival of the Israeli army, to whom Abuali reported the incident. According to Abuali, however, the Israeli army neither apprehended nor reprimanded the men.[7]

Based on these experiences, Abuali believes that his life would be in danger should he return to his native region.

## II.

This is an immigration case in which the petitioner challenges a final order of deportation. Because the deportation proceedings against Abuali were commenced before April 1, 1997, but a final order of deportation was issued on or after October 31, 1996, we have jurisdiction under the transitional provisions of the Illegal Immigrant Reform and Immigrant Responsibility Act of 1996 (IIRIRA). See Pub. L. No. 104-208, div. C., tit. III, subtit. A, § 309(c)(4)(D), 110 Stat. 3009, 3009-626 (1996).

## III.

Abuali challenges the BIA's decision to apply the streamlining regulations in his case. Abuali argues that the streamlining regulations were not applicable to his case

---

[7] Abuali's asylum application also claims that Abuali was "beaten by soldiers as other members of the Israeli Army watched." (R. 342.) This allegation, however, appears neither in Abuali's briefs before this Court nor anywhere else in the Administrative Record.

because the requirements set out in 8 C.F.R. § 1003.1(c)(4) were not met.[8]  Specifically,

Abuali disputes that: (1) the IJ's result was correct; (2) Abuali's appeal did not involve

the application of precedent to a novel factual situation; and (3) the factual questions

presented by Abuali's appeal were so insubstantial as not to warrant three-member

review.

We have already had occasion to consider whether this Court has a sufficient basis

---

[8] The current streamlining regulations read, in relevant part:

(I) The Board member to whom a case is assigned shall affirm the decision
of the Service or the immigration judge, without opinion, if the Board
member determines that the result reached in the decision under review was
correct; that any errors in the decision under review were harmless or
nonmaterial; and that
(A) The issues on appeal are squarely controlled by existing Board or
federal court precedent and do not involve the application of precedent to a
novel factual situation; or
(B) The factual and legal issues raised on appeal are not so substantial that
the case warrants the issuance of a written opinion in the case.

8 C.F.R. § 1003.1(e)(4).  As originally promulgated, see 64 Fed. Reg. 56,135, 56,141
(Oct. 18, 1999), 8 C.F.R. § 3.1(a)(7) read, in relevant part:

(ii) The single Board Member to whom a case is assigned may affirm the
decision of the Service or the Immigration Judge, without opinion, if the
Board Member determines that the result reached in the decision under
review was correct; that any errors in the decision under review were
harmless or nonmaterial; and that
(A) the issue on appeal is squarely controlled by existing Board or federal
court precedent and does not involve the application of precedent to a
novel fact situation; or
(B) the factual and legal questions raised on appeal are so insubstantial that
three-Member review is not warranted.

from which to review the BIA's decision to streamline an alien's appeal. See Smriko v. Ashcroft, __ F.3d __, 2004 WL 2381946, at *12 (3d Cir. Oct. 26, 2004). In Smriko, we concluded that 8 C.F.R. § 1003.1 provides a "meaningful standard against which to judge the agency's exercise of discretion." Id. at *12-*13 (quoting Heckler v. Chaney, 470 U.S. 821, 830 (1985)). Thus, if we determine that the BIA's decision to streamline was not arbitrary and capricious in light of the requirements of 8 C.F.R. § 1003.1(e)(4), we will uphold it. See id. at *12.

In this case, we conclude that the BIA's decision was not arbitrary and capricious. First, the record does not compel the conclusion that the IJ erred in denying Abuali's asylum application. Second, Abuali has made no showing, nor do we find, that his factual situation is novel. To be sure, Abuali's nationality is not entirely straightforward and, as a result, his deportation proceeding did not take an entirely linear path. But it is not as if the IJ had to stretch precedent to conform it to Abuali's asylum claim. Finally, the factual questions in Abuali's case were not so substantial to demand three-member review.[9] The disputed facts are straightforward, and the determination that the IJ reached, though not in Abuali's favor, was easily divined from those facts. The BIA did not act arbitrarily and capriciously in applying the streamlining regulations to Abuali's case.

---

[9]As noted above, the current streamlining regulation requires the BIA member to consider whether the questions presented "are not so substantial that the case warrants the issuance of a written opinion." 8 C.F.R. § 1003.1(e)(4)(B). We see no meaningful distinction between these two standards.

10

## IV.

Abuali argues that the BIA's streamlining regulations violate a "fundamental principle of administrative law." (Appellant's Br. at 10, 15.) Abuali identifies language in SEC v. Chenery Corp., 332 U.S. 194, 196 (1947), to the effect that, in order for agency action to be valid, the agency must make explicit the grounds on which it takes that action. A majority of this Court sitting en banc considered, and rejected, an essentially identical argument in Dia v. Ashcroft. 353 F.3d 228, 241 (3d Cir. 2003).

## V.

Abuali challenges the IJ's decision regarding his nationality. He argues that his own admission regarding his citizenship was a result of his lack of education and facility with the English language. He further points to the letter from the Jordanian permanent mission as proof that he is not, in fact, a Jordanian citizen.

We note that, given the available evidence, the IJ's decision does not appear to be objectively erroneous. In light of Abuali's admission, and the fact that the letter he provided is somewhat ambiguous, we cannot say that the IJ was necessarily incorrect in concluding that Abuali was a Jordanian citizen. Regardless, whether or not the IJ's conclusion was erroneous is not a question we need answer as we find any error to have been harmless.[10] If Abuali is not, as he claims, a Jordanian citizen, the INS will be

---

[10] We note that, while the IJ's oral decision explicitly declined to reconsider the question of Abuali's citizenship, it is clear that the IJ recognized and appreciated that Abuali was a native of the Israeli Occupied Territories. Indeed, the only respect in which the IJ seems to have found Abuali's Jordanian "citizenship" relevant was in his

11

unable to deport him to that country. In that event, the INS will be forced to reopen his deportation proceeding. Abuali will then be able to seek to correct the error in perception as to his citizenship and, presumably, will be able to seek reevaluation of his asylum and withholding of removal claims. If, of course, Abuali is a citizen of Jordan, he will be deported to that country. But it goes without saying that, if Abuali is a Jordanian citizen, there was no error in the IJ's decision.

Abuali's argument, therefore, would have this Court needlessly review the merits of the IJ's asylum determination. Because the question will necessarily resolve itself through the natural course of Abuali's deportation, we decline to do so.

## VI.

For the foregoing reasons, we will deny Abuali's petition.

---

determination that Abuali could avoid having to work in Israel, and all of the hardship that might entail, by seeking employment elsewhere in Jordan. To be sure, it is reasonable to contend that Abuali's Jordanian "citizenship" thus played an important role in the IJ's decision not to grant asylum. But, for the reason stated above, any error was harmless.